THE BOARD OF SUPERVISORS OF THE COUNTY OF COLES

*v.*

THE PEOPLE *ex rel.* J. F. Ashbrook *et al.*

*Opinion filed April 18, 1907.*

1. COUNTY BOARDS—*duty of county board to levy tax to pay outstanding judgments is positive.* The act of 1905, (Laws of 1905, p. 134,) amending section 34 of the act relating to counties, creates a positive duty on the part of county boards to include among the purposes of its tax levy, within the limits fixed by law, the payment of outstanding judgments against the county for the payment of which no other provision has been made.

2. SAME—*a county board cannot escape statutory duty by adjournment—mandamus.* By adjournment without having included among the purposes of its tax levy the payment of any outstanding judgments, after demand has been made, a county board cannot escape its statutory duty in that respect, and it may be compelled by *mandamus,* in the absence of any lawful excuse, to re-convene and provide for payment of such judgments as required by the statute.

3. CONSTITUTIONAL LAW—*section 34 of act relating to counties is not, on its face, unconstitutional.* The amendment of 1905 to section 34 of the act relating to counties does not, on its face, purport to unlawfully take from a county revenue needed for current expenses nor violate the obligation of the county's contracts for payment of compensation to its officers, and the question whether compliance with the statute will, in a particular instance, have that effect cannot be considered in a *mandamus* proceeding unless raised by the pleadings.

APPEAL from the Circuit Court of Coles county; the Hon. M. W. THOMPSON, Judge, presiding.

The appellees, being fifteen judgment creditors of Coles county, filed their joint petition for a writ of *mandamus* in the circuit court of that county against its board of supervisors. The petition set up the dates and amounts of the various judgments, aggregating about $80,000, and alleged that said judgments each bear interest at five per cent per annum from their respective recoveries and are each still due, owing and unpaid, and no action has been taken by the county either to secure a reversal thereof or to pay the same,

and that there is no money in the treasury of said county
for said payment and has been none since the recovery of
said judgments. The petition further alleges that it was
the duty of the board of supervisors of said county, at its
September session, 1906, when it determined the amount
of all taxes to be raised for county purposes, to include
among the purposes for which such taxes should be raised
the payment of said judgments, yet the board, not regard-
ing its duty in that behalf, did not at said meeting include
among the purposes for which taxes should be raised the
judgments of the petitioners or any of them, but, on the
contrary, said board met at the time fixed by law and the
attorneys for the petitioners appeared before said board
and demanded that it should include said judgments in the
amount of its tax levy, but said board failed to do so, and
after remaining in session for several days, on November 8,
1906, passed a tax levy of $51,000, which was at the rate
of seventy-five cents on the $100, but did not include any
of the judgments of the petitioners, and after making the
said levy finally adjourned. It is further alleged that there
are unpaid claims against said county which have not been
reduced to judgment to the amount of $25,000 in addition
to the judgments of the petitioners, and that a levy of sev-
enty-five cents on the $100 will produce the sum of $51,000,
and no more. The prayer of the petition is, that a writ
of *mandamus* may issue directing said board forthwith to
meet, and to include among the purposes for which taxes
are levied the judgments of the petitioners, and to provide
for the payment of said judgments, and interest thereon,
in equal annual installments, not exceeding ten in number,
and to include one annual installment in the amount of taxes
to be raised for county purposes in this current year and
one in each year hereafter, not exceeding ten in all, until
said judgments are fully paid.

The appellant filed a general and special demurrer to the
petition, which was overruled by the court, and it elected to

226—37

stand by its demurrer, and a judgment was entered awarding the writ as prayed in the petition, to reverse which an appeal has been prosecuted to this court.

JOHN McNUTT, Jr., for appellant.

H. A. NEAL, and F. K. DUNN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The question presented by this appeal is whether the allegations of appellees' petition were sufficient to require an answer and a hearing upon the merits, or whether they were so defective as to justify the court in sustaining a demurrer thereto.

The right of appellees to the writ is based upon the provisions of section 34 of chapter 34. (Hurd's Stat. 1905, p. 565.) Prior to 1905 this section was as follows: "Execution shall not, in any case, issue against the lands or other property of a county; but when judgment is rendered against a county, the county board shall direct an order to be drawn on the county treasurer for the amount of the judgment and costs, which orders shall be paid as other county debts." In 1905 it was amended by adding the following:

"(A) Whenever the county board in any county shall in any year determine the amount of all taxes to be raised for county purposes, such board shall include among the purposes for which such taxes are to be raised the payment of any outstanding judgment or judgments against such county for the payment of which no other provisions have been made.

"(B) The county board may provide for the payment of any such judgment or judgments and the interest thereon in equal annual installments, not exceeding however ten in number, and may include one of such installments in the amount of taxes to be raised for county purposes in each

year, but the aggregate amount of all taxes to be raised for county purposes shall not in any year exceed the rate of seventy-five cents on the $100 valuation of property unless authorized by a vote of the people of the county."

It seems to be conceded that prior to this amendment there was no statutory duty imposed upon the board of supervisors, in making the tax levy, to include among the purposes for which such taxes were to be raised the payment of outstanding judgments against the county, but the theory of the petition is, that since the amendment of 1905 the statute is mandatory and the board has no discretion in the matter, but must comply with its provisions by including the outstanding judgments in the tax levy.

A reversal of the judgment of the circuit court is urged upon two grounds: First, that the county board had no power, at any meeting except in September, to make the tax levy; second, that the revenue of a county sufficient to meet its ordinary expenses is exempt from interference by the courts.

Under the first point the proposition contended for is, that inasmuch as the statute requires the tax levy for county purposes to be made at the September meeting of the board, and that meeting having finally adjourned without making the levy, *mandamus* will not lie to compel the board to reconvene for that purpose; also, that a levy made after such adjournment, including these judgments, would not only be void in that regard as made at a time not provided by the statute, but would endanger the levy already made.

The amendment of section 34 in 1905 was unquestionably intended to impose a positive duty upon the board of supervisors to include among the purposes for which taxes are to be raised the payment of any outstanding judgments against the county for the payment of which no other provisions have been made. Such is its plain and unequivocal language. The petition in this case alleges that at the September meeting, 1906, the petitioners, by their counsel, ap-

peared before the board and demanded that it comply with that statute, which it failed and refused to do and adjourned without complying with such demand. No objection is here made to the sufficiency of the demand as alleged in the petition. The board having positively refused, by its final adjournment, after demand, to make the levy, it sought to deprive the petitioners of the remedy given them by the statute for the payment of their judgments. We entertain no doubt that it could not, by a refusal to act during its September meeting and its final adjournment without such action, avoid its imperative duty and thereby render nugatory the positive provisions of the statute.

That the conduct of the board after the demand was to all intents and purposes a refusal to comply with the statute seems to be admitted, but the contention is, that having failed to take action during its September meeting it could not lawfully make the assessment at a subsequent meeting, and therefore *mandamus* would not lie. In other words, counsel for appellant seems to think the case is like those in which it has been held that a taxing body can only act in the manner and at the time specified in the statute, and that a tax levied at a time different from that authorized by law is illegal and void. Here the county board failed and refused to act at all as to the judgments. It attempted to levy a tax for a part of the purposes required by the statute but wholly failed and refused to include in its assessment the judgments of the petitioners, which the statute peremptorily required it to do. If a board of supervisors should positively refuse to levy any tax at its September meeting, even for the payment of the current expenses of the county, would it be seriously contended that the courts were powerless to compel it to act until its next regular September meeting? The proposition that an inferior tribunal which has refused to perform a positive official duty at the time when it is legally required to do so cannot, by adjourning its meeting, place itself beyond the coercive power of the courts to

compel the performance of the duty enjoined by law, but it may be compelled by *mandamus* to re-assemble and perform its legal duty, seems too clear for argument. (*Loewenthal* v. *People*, 192 Ill. 332.)   In the case of *People* v. *Board of Supervisors*, 185 Ill. 288, we said (p. 293) :   "It is the general rule *mandamus* will not be granted in anticipation of a default or failure of official duty, and if the writ may not be availed of after the omission or failure has occurred the writ will become inoperative in all such cases as the one at bar, and the observance or non-observance of the statutory requirement becomes a matter resting wholly within the uncontrolled discretion of boards of supervisors. Without regard to the question whether boards of supervisors, of their own motion, may act in the matter of re-dividing election districts at other than the July or August meeting if they omit to act as the law requires at such meetings, such boards may, under the authority of an order and judgment of the court, perform such duty at any other term, if so directed by such order and judgment."   So here, while it may be that the board of supervisors could not, of its own motion, levy a tax for county purposes except at the September meeting, still if it failed and refused to do so at that time the power of the court could be invoked to compel the performance of that duty.   Of course, if it were true that a board of supervisors could not, under any circumstances, levy a tax at any other time than the regular September meeting, *mandamus* would not lie, for the reason that the writ will never issue to compel the doing of a useless or impossible thing.   But in the case of *State Board of Equalization* v. *People*, 191 Ill. 528, the board was compelled by *mandamus* to re-convene after its final adjournment and assess certain omitted property; and in the case of *Chicago and Eastern Illinois Railroad Co.* v. *People*, 218 Ill. 463, the board of supervisors, which had levied seventy-five cents on the $100 at its regular September meeting, in the month of January following added forty-two cents on the $100 for

the payment of outstanding indebtedness in pursuance of a vote of the people of the county, and that additional levy was held to be legal and valid on an application for judgment against the railroad company for delinquent taxes, it being urged that the additional tax was illegal because not levied at the September meeting.

The position of counsel for the appellant inevitably leads to but one conclusion, and that is, that a board of supervisors may, by the adjournment of a stated meeting, render wholly ineffective a provision of the statute which requires a thing to be done at that particular meeting. Had the board at its September meeting positively refused to comply with the demand made by counsel for the judgment creditors the petition might have been filed before the adjournment, but in the absence of such a refusal, if the petition had been filed during the meeting it could have been answered that the law gave the board the whole of that term to make the levy, and if it may now be successfully insisted that the writ will not issue because the meeting has adjourned the statute becomes a dead letter.

In arguing the second ground of reversal counsel says the amendment to section 34 is unconstitutional, but he points out in that connection no provision of the constitution which is violated by it, but argues rather the question "whether this amendment shall take from the county, as a component part of the State, its revenues needed for current expenses and thus set aside the established law of the land." It may be admitted, at least for the purposes of this case, that the revenue of a county sufficient to meet its ordinary running expenses is exempt from interference by the courts, but it must be conceded that section 34, on its face, does not attempt to do any such thing, and if it can have that effect in any given case it must be because of the existing conditions in the particular county.

Counsel seems to argue the case as though the statute was only applicable to a county which is heavily indebted,

or in which to provide for the payment of its just debts or judgments against it would render it impossible to pay the ordinary running expenses of the county.  If the county board had answered the petition and averred that seventy-five cents on the $100 of the taxable property of the county was absolutely necessary to defray the ordinary running expenses of the county, as was done in *Town of Sparland* v. *Barnes,* 98.Ill. 595, and for that reason it had refused to include in its levy the outstanding judgments as one of the purposes for which the taxes of the county were raised, and upon issue joined on such answer had been able to prove it, the question here discussed would have been raised.  But the petition which the board by its demurrer says is insufficient does not present any such question, and therefore the discussion as to whether courts will, under any circumstances, interfere to deprive a county of sufficient means to meet its ordinary running expenses is aside from the issue. Suppose a county is heavily indebted; can it be said that it may justly make provision for the payment of one debt or one class of claims and refuse to make any provision whatever for the payment of others, even those reduced to judgments?  Or suppose instead of a county in which the ordinary running expenses amount to the full sum of seventy-five cents on the $100 we take for illustration a county in which the contrary is true,—one in which the ordinary expenses would amount to but a small portion of the amount authorized to be levied; as to the latter county there certainly would be no legal objection to the enforcement of the law.  We are of the opinion that this statute does not deprive a county of sufficient means to meet its ordinary running expenses; nor does the petition in this case, by any fair construction, ask the court to interfere with the board of supervisors in providing for its ordinary expenses.

The contention that this statute impairs the obligation of contracts needs but a passing notice.  The position, as we understand it, is, that inasmuch as the county has en-

tered into contracts with its various officers for the payment of their salaries during their terms of office, if the county board is compelled by *mandamus* to divert a portion of the tax to the payment of the judgments mentioned in the petition such officers will be deprived of their salaries and therefore their contracts with the county be impaired. No such question is raised on this record. What we have already said as to the ordinary expenses of the county is applicable to this question. If including the judgments named in the petition in its tax levy will deprive the county of the means of paying the salaries of its officers, that fact should be set up by way of answer and on the hearing established by proof.

It seems to be thought by counsel for the appellant that the statute is intended to impose a hardship upon counties or to impose upon them the performance of onerous and impracticable duties. Such is clearly not the intent and purpose of the statute. It proceeds upon the supposition that every county in the State will be actuated by an honest purpose to pay its legal obligations, especially those which have been reduced to judgments, and it is intended to aid the county authorities in the accomplishment of that purpose.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*