(No. 15100.—Decree affirmed.)

THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant, vs. THE CITY OF TAYLORVILLE et al. Appellees.

*Opinion filed February 21, 1923—Rehearing denied April 6, 1923.*

1. MUNICIPAL CORPORATIONS—*when notice of election to issue bonds is sufficient.* Where a proposition to issue bonds for a municipal lighting plant is to be submitted at the same time a general election is held, the city council is not required to name the judges, clerks and voting places, which were already designated for the general election; and where the notice of the election, stating the proposition, is published twenty days prior to the election and is posted for that length of time in every voting place the statute is complied with. (*Roberts* v. *Eyman,* 304 Ill. 413, distinguished.)

2. SAME—*complainant has burden of proving that bond issue exceeds constitutional limit.* A complainant suing to enjoin a bond issue has the burden of proving his allegation that it exceeds the constitutional limit of the city's indebtedness, and where the amount of the existing indebtedness, as shown by the evidence, when added to the bond issue, does not exceed the constitutional limit the bill should be dismissed.

3. ELECTIONS—*when publication of city election notice is sufficient.* Under section 9 of article 4 of the Cities and Villages act, requiring an election notice to be published twenty days prior to the election, the notice is not required to be published each day for twenty days but it is sufficient if a single notice is published and is posted for the required time prior to the election. (*Scammon* v. *City of Chicago,* 40 Ill. 146, distinguished.)

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

HOGAN & REESE, for appellant.

C. A. PRATER, City Attorney, and LESLIE J. TAYLOR, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed its bill against the city of Taylorville, and the mayor and aldermen thereof, to enjoin the issuance of $80,000 in municipal bonds authorized by a vote of the

people for the construction and operation of a municipal electric lighting plant. A temporary injunction was issued without notice by the master in chancery, which was later dissolved. The issues were finally made up on the second amended bill, and later a supplemental bill was filed alleging certain matters occurring while the action was pending. The original bill charged that the ordinance authorizing the issuance of the bonds was void because it authorized bonds in excess of the five per cent limitation fixed by the constitution. The bill also charged that the election at which such bonds were voted was void, for the reason that while it was held on the same day as the general city election, it was, in fact, a special election, and that proper notice was not given and the city council did not designate the judges, clerks and polling places. Upon hearing the chancellor dismissed the bill for want of equity and awarded the sum of $250 damages because of the wrongful issuance of the temporary writ of injunction. The cause comes here on the certificate of the chancellor that the validity of an ordinance is involved.

The principal contentions of the appellant are, that sufficient notice was not given to constitute a valid election, and that the bonds attempted to be issued would create an indebtedness in excess of the amount permitted by the constitution.

It is stipulated that a single notice of the election to authorize the issuance of bonds was published in a newspaper in the city of Taylorville on March 31, 1920, which was twenty days prior to holding the election. Appellant contends that under the statute notice of the election should have been published each day for twenty days prior to the election. Section 9 of article 4 of the Cities and Villages act requires that the city council shall give notice of an election by causing the same to be printed in some newspaper published in such city, if there be one, or posted at each voting place in such city, giving notice of the time,

places of election, etc., for at least twenty days prior to such election.   Section 14 of article 4 of the act provides that in case of a special election the city council or board of trustees shall give notice of such special election, in which shall be stated the questions to be voted upon, and cause such notice to be published or posted for the same length of time and in the same manner as is required in the case of regular annual elections in such cities or villages.   These sections also require that the city council or board of trustees shall appoint judges and clerks of election.   Section 1 of the act approved June 4, 1909, relating to the authorization of bonds, (Hurd's Stat. 1921, p. 596,) provides that no ordinance passed by the city council or board of trustees which provides for or authorizes the issuance of bonds, other than those to refund bonded indebtedness existing, shall become operative until such ordinance shall have been submitted to the voters of such city or village at the next succeeding general or special election, or any special election called for that purpose, and approved by a majority of the voters voting on the question.   In this case the approval of the ordinance authorizing the issuance of the bonds was submitted to a vote of the people at the regular election on the 20th of April, 1920.   The judges, clerks and voting places had been designated, and it was not necessary that the ordinance submitting this proposition to a vote of the people should re-name them.   The fact that a public proposition was submitted made it no less a general election.

The appellant cites *Roberts* v. *Eyman,* 304 Ill. 413, as authority for its contention that the election in this case was a special election, notwithstanding it was held at the same time and places as the general city election.   The election there referred to was that provided for in the proviso in section 91 of the School law.   Under that proviso the board of education was required to establish a number of voting precincts in the district in which the election was to

be held, fix their boundaries, designate a polling place in each, appoint two judges and one clerk for each polling place, assign a member of the board of education, so far as practicable, to each precinct, and provide for the posting of notices of election in ten of the most public places in each voting precinct. It was held in that case that this proviso excepted all elections under it from the provisions of the general School law, and that since there was no general law providing for such an election, the election was a special election. It will be readily seen that the election there referred to is not a special election in the sense spoken of in the Cities and Villages act or under the general Election law. This act provides, as we have seen, that such question shall be submitted at the next general election, or a special election if such has been called, or at a special election called for that purpose. The election in this case was a general city election. The statute provides notice by publication in a newspaper of the city, if there be one, or by notices posted in every voting place in such city. In this case the record shows that the notice of the election was published twenty days prior to the election and also posted for that length of time in every voting place. In *Stone* v. *City of Chicago,* 207 Ill. 492, the question of the sufficiency of publication of an election notice was raised, and it was held that under the act of 1865 as amended, requiring that the notice be published at least three weeks prior to the election, one publication three weeks prior to the election was sufficient to comply with the law. To the same effect are *Jenkins* v. *Pierce,* 98 Ill. 646, and *Weld* v. *Rees,* 48 id. 428.

Appellant contends that under the holding in *Scammon* v. *City of Chicago,* 40 Ill. 146, the notice should have been published each day for twenty days prior to the election. In that case the notice required was "by six days' publication in the corporation newspaper." That language was held to mean a publication for six different days. That

case is distinguishable from the case at bar on the language used.   The notice in this case was sufficient.

Appellant contends that the chancellor erred in holding that the issuance of $80,000 in bonds would not exceed the five per cent limitation on indebtedness.   It charges in its bill that such would be the case, but the proof does not sustain that contention.   The record does not show the exact financial condition of the city either at the time of the filing of the original bill or at the filing of the supplemental bill.   It does show that at the time of the election authorizing the bonds the constitutional limit of indebtedness of the city of Taylorville was $126,250.   It is conceded that in April, 1920, the city had a bonded indebtedness for park purposes of $30,000; that it had outstanding $8000 in bonds representing assessments against the city for street improvements, and an unpaid part of a judgment in favor of Shade & Co., amounting to $6000.   Beyond this there is no proof sufficient to establish the averments of indebtedness.   Appellant claims a number of the items as debts of the city.   One is claimed as a park improvement contract for $6000.   The evidence shows no such contract.   A contract for water plant, $3500, is to be paid out of these bonds when issued.   Other items claimed as indebtedness because of overdrafts totaling over $13,000 are shown to be bookkeeping overdrafts drawn on and paid out of funds in other of the city accounts.   Appellees contend that the $8000 representing the amount which the city had been assessed for public benefits in assessment cases has been held by this court not to be a debt of the city in the sense of the constitutional limitation, and cite *Stone* v. *City of Chicago, supra,* and *Jacksonville Railway Co.* v. *City of Jacksonville,* 114 Ill. 562.   Those cases were distinguished in *People* v. *Chicago and Alton Railroad Co.* 253 Ill. 191, where it was held that paving bonds, when issued, become a part of the city debt in the sense of the constitutional limitation.   Considering this to be true, and that the appellees were indebted in the sum

of $8000 on those bonds, the appellant has not shown that the bonds here sought to be issued will place the city's indebtedness beyond the constitutional limit. These bonds, together with $30,000 in park bonds, if the latter be considered such a debt, and the $6000 unpaid on the Shade & Co. judgment, amount to $44,000, which, with the bonds voted in this case, bring the city indebtedness to $124,000, while the constitutional limitation is shown to be $126,250.

Appellant did not sustain the burden cast upon it to show that the proposed bonds would increase the city's indebtedness beyond the constitutional limit, and the circuit court did not err in dismissing the bill. The decree is therefore affirmed. °

*Decree affirmed.*